OPINION
Appellant, Aldoluphus Moyer, appeals from the judgment of conviction and imposition of sentence rendered by the Ashtabula County Court of Common Pleas upon a jury verdict finding appellant guilty of four counts of child endangering. For the reasons that follow, we affirm the judgment of the trial court.
On May 7, 1997, appellant was indicted on fourteen counts of child endangering, felonies of the second degree, in violation of R.C. 2919.22(B)(3) and (E)(3). The indictment stemmed from allegations that appellant administered excessive corporal punishment toward his teenage son, John, resulting in serious physical harm to the child. Prior to the May 1997 indictment, appellant was initially charged on one count of felonious assault and one count of child endangering in Ashtabula County Court of Common Pleas Case No. 96 CR 209. However, on April 15, 1997, that case was dismissed and appellant was reindicted on the fourteen counts of child endangering. To the above charges, appellant entered a plea of not guilty.
On June 12, 1997, appellant filed a motion to require appellee to make a more definite statement as to the date and time that each of the counts referenced in the indictment were alleged to have occurred. The trial court granted appellant's motion and later conducted a review of the testimony presented before the grand jury to determine whether more precise dates for the commission of the offenses could be determined. By judgment entry filed October 28, 1997, the trial court held that six counts, specifically, counts "One, Five, Eight, Nine, Twelve and Fourteen," were stated with sufficient specificity to permit appellant to prepare a proper defense. The remaining counts in the indictment were dismissed without prejudice.
A trial commenced on November 4, 1997. It is apparent that, by agreement of the parties, the remaining counts to the indictment, one, five, eight, nine, twelve, and fourteen, were renumbered as counts one through six respectively. However, no judgment entry exists in the record on appeal formally referencing this renumbering.
At trial, the alleged victim in this case, then a fifteen year old high school student, testified to a number of beatings that he received at the hands of appellant from June of 1995 to November of 1996. The victim stated that appellant would repeatedly lock him in his room and require him to write "lessons" or essays regarding the victim's violation of house rules and the virtues of respecting himself and his family. The victim testified that appellant prohibited him from leaving his room until his "lessons" were completed to his father's satisfaction, resulting in the victim eating the majority of his meals in his bedroom.[1] The victim further testified that when he failed to complete his "lessons" or otherwise disobeyed his father, appellant would repeatedly strike him with a variety of different objects including an extension cord, a baseball bat, and a tiered shelf.
During the first half of November 1996, appellant became angry with the victim for allegedly stripping some plastic off the shower wall in the bathroom. When the victim denied any involvement in the incident, appellant hit him and pressed a metal baseball bat against the victim's chest until he apologized and admitted to damaging the shower. The morning of November 15, 1996, appellant again became angry when the victim failed to complete his "lessons" from the night before. Appellant repeatedly struck the victim's hand with a baseball bat and threatened to break the victim's fingers if he continued to disobey his parent's orders. Appellant also described a technique that he learned for breaking a person's finger in such a way as to cause death. That same day, November 15, 1996, the victim went to school and told his principal about these alleged incidents. The principal contacted the police and children services.
Gloria Altonen, a caseworker for the Ashtabula County Children's Services Board, responded to the call from the school. Ms. Altonen testified that when she first met the victim he was crying, shaking, and his hand was swollen. During her initial interview with the victim, Ms. Altonen noticed several scars on the victim's face, neck, and multiple wounds, at various stages of healing, on his back. The police officers that responded to the scene took a number of photographs of the injuries found on the child's body.
During her initial conversation with the victim, Ms. Altonen determined that the victim was afraid of appellant and opined that his injuries more than likely occurred within the home. Based on her observations, Ms. Altonen obtained an emergency ex parte order removing the victim from his parent's custody.
Dr. Pamela Lancaster later examined the victim and counted twenty-one (21) different curved, linear marks on his back, arms, and neck. Dr. Lancaster opined that the victim received these injuries after being beaten with a "cord like structure, electrical cord or something very similar." She also observed injuries to the victim's head that were consistent with blunt trauma, and opined that the injuries were indicative of multiple incidents of abuse. Dr. Lancaster testified that the majority of the wounds found on the victim's body were permanent in nature and considered the wounds as constituting "serious physical harm."
Taking the stand in his own defense, appellant denied that he disciplined his child to the extent described by the victim. He further denied striking the victim or causing the injuries found on the victim's back, arms, neck, and head. Appellant's wife, Cynthia Moyer, also testified that she never saw appellant exert any sort of physical punishment against her son. As to the scars found on the victim's body, both appellant and Mrs. Moyer testified that the victim was a shy child and that they never saw him without a shirt. As to the victim's injuries that were visible, appellant and Mrs. Moyer asserted that the injuries were caused by roughhousing with his friends that failed to heal properly when the victim continued to "pick at" these injuries. Evidence was also presented as to the victim's recent decline in behavior and the possibility that his injuries may have been caused by some sort of gang initiation.
The victim's former junior high principal, Sam Kent, testified that when the victim was a student at his school, some concerns were raised about marks found on the victim's back. Children Services was called and the victim stated that he received these injuries after playing football or fooling around with his friends. At that time, no further action was taken concerning the victim's injuries.
On November 6, 1997, following the conclusion of the evidence presented at trial, the jury returned its verdict finding appellant guilty on four of the six remaining counts of child endangering. Specifically, the jury found appellant guilty on renumbered counts two, three, four, and six, corresponding to counts five, eight, nine, and fourteen of the May 1997 indictment. To each of these counts the jury found that the victim did suffer serious physical harm. The jury found appellant not guilty under the remaining renumbered counts in the indictment, one and five, corresponding to counts one and twelve in the May 1997 indictment. Appellant was subsequently sentenced to serve an indefinite term of incarceration of four to fifteen years on renumbered count two as this offense occurred prior to the effective date of Senate Bill 2. This count was to run concurrently with the remaining counts where appellant was sentenced to serve a definite four-year term of incarceration on each count also to run concurrently. From this judgment, appellant filed a timely notice of appeal and now asserts the following three assignments of error:
 "[1] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ALLOWED THE STATE OF OHIO TO PUT [APPELLANT] ON TRIAL, ACCEPTED THE JURY'S VERDICTS OF GUILTY, AND SENTENCED [APPELLANT] ON COUNTS OF THE MULTI-COUNT INDICTMENT WHICH HAD PREVIOUSLY BEEN DISMISSED.
 "[2] THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 "[3] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT SENTENCED HIM TO A TERM OF FOUR TO FIFTEEN YEARS UPON THE JURY'S VERDICT OF GUILTY TO COUNT TWO OF THE INDICTMENT."
In the first assignment of error, appellant questions how he can possibly face imprisonment under counts two, three, four, and six of the indictment when the trial court specifically dismissed these counts from the May 1997 indictment before trial. Appellant acknowledges that after the trial court dismissed eight counts from the original fourteen count indictment, the parties proceeded as if the remaining six counts of the indictment, specifically, counts one, five, eight, nine, twelve, and fourteen, were renumber one through six, respectively. However, appellant criticizes the trial court for failing to follow its own rules of civil and criminal procedure which seem to require such a change to be formally made through the issuance of a judgment entry. Appellant cites to Loc.R. 4 which provides as follows:
 "A. No pleading or motion subsequent to filing shall be amended by interlineation or obliteration except by leave of the court, as shown by a judgment."
 Assuming that the above local rule may have some sort of application to this case, we note that Crim.R. 12(B) requires any alleged defect in an indictment be raised prior to trial. No such objection appears in the record before this court because, as appellant acknowledges, the record adequately demonstrates that the parties agreed to renumber the counts. Furthermore, appellant does not present, and we cannot perceive, any prejudice suffered by appellant as a result of this renumbering. A review of the record reveals that the renumbered counts correspond to the exact same charges that remained from the fourteen-count indictment of May 1997. Appellant's first assignment of error is devoid of merit.
In the second assignment of error, appellant alleges that he was denied the effective assistance of counsel because his trial attorney refused to review photographs taken of the victim's body that appellee intended to introduce at trial. Appellant alleges that if trial counsel reviewed the photographs, he would have seen the extent of the injuries caused to the victim and could have counseled his client to enter a plea of guilty to only one count of second, or possibly, third degree child endangering allegedly offered by appellee during plea negotiations.
The standard of review for ineffective assistance of counsel requires a two-part test. Strickland v. Washington (1984),466 U.S. 668. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Additionally, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. See, also, State v.Bradley (1989), 42 Ohio St.3d 136.
Applying this standard to the facts of this case, we conclude that appellant was not denied the effective assistance of trial counsel. The basis for appellant's allegation is found in the following dialogue between trial counsel and the prosecuting attorney at appellant's sentencing hearing:
 "APPELLANT'S COUNSEL: I will tell [the court] that [appellant] was originally indicted on case number 96-[CR-]209, a [sic] one-count of felonious assault for allegedly striking his son * * * in the hand with a baseball bat. There was a Count Two there involving that same incident where he — was a felony of the third degree where he had allegedly told his son he could break his fingers or something.
 "That case was set for trial. I was in contact with the Prosecutor's Office, when it was mentioned about some photographs of [the victim's] back. I did not wish to see them. I thought they had nothing to do with the case, and some argument arose and after being told three times that I would see them, I hung up. Shortly thereafter, within four days prior to trial [of that] case — that case was dismissed, and Mr. Moyer was reindicted on 18 [actually 14] Counts.
 "I also, and again, normally where prenegotiations — we did come at one time at a pretrial to negotiate to see if we could settle this. We went through, as a result of that, I talked to Mr. Moyer, and it was our understanding it would have been a felony of the third degree. Mr. Moyer at that time still, took me two weeks to even convince him to talk about it or plea to that. But at that time he was worried to enter a plea to that under the Alford Rule. When we arrived, we discovered it was a felony of the second degree and we did not take that.
"* * *
 "ASSISTANT PROSECUTING ATTORNEY: Your Honor, if I may, just to address a couple of the remarks [appellant's trial counsel] made and with all due respect * * *.
 "This case originally was indicted prior to [the current prosecutor] taking office and [the assistant prosecutor] joining this prosecutor's office. When I looked at the case the way that it was indicted was such that we would only be able to address the issue of the date that [appellant] hit his son with the baseball bat in the hand, and we would have only been able to show those photographs to the jury.
 "The reason that the case was reindicted, and the prosecution does have discretion, was so that we could present the other photographs and have testimony regarding the other injuries which were more significant regarding the extension cord injuries.
 "And, Your Honor, with reference to [Appellant's trial counsel's] belief that a felony of the third degree was offered, I believe the Court was in the Chambers when I specifically said the offer is now a felony of the second degree. If you return to me and tell me your client will plead to a felony of the third degree, I will go to the victims and see if they'll agree to that. That was the conversation." (Emphasis added.)
A review of the above quoted material does not disclose, as argued by appellant, that his trial counsel never looked at any of the photographs taken by the state of the victim's injuries. Rather, when appellant was previously indicted in Case No. 96 CR 209 on the charges of threatening the victim and striking the victim's hand with a baseball bat, appellant's counsel saw no relevance, at that time, in viewing photographs taken of the victim's back. Although the record reflects that counsel elected not to view the photographs on this single occasion prior to the existence of the case under which appellant now stands convicted, the record fails to support appellant's contention that he was denied the effective assistance of counsel by counsel's failure to ever look at these photographs. Moreover, given the confusion that exists in the record before this court as to what was offered by the state during plea negotiations and appellant's stated unwillingness to plead guilty to any count under the indictment, appellant has failed to establish how he was prejudiced by counsel's alleged ineffectiveness. Appellant's second assignment of error is without merit.
In the third assignment of error, appellant argues that the trial court erred in sentencing him on renumbered count two pursuant to the sentencing scheme in place prior to the enactment of Senate Bill 2. The issue appellant presents is whether a defendant who committed an offense before July 1, 1996, the effective date of Senate Bill 2, but not sentenced until after that date, should be sentenced under the pre-Senate Bill 2 or the Senate Bill 2 statutory scheme.
In State v. Sprafka (Apr. 10, 1998), Lake App. No. 96-L-137, unreported, this court had the opportunity to address the very arguments made by appellant in support of his position that he should be sentenced under the Senate Bill 2 statutory scheme. Without repeating our analysis in Sprafka, this court concluded that a defendant who commits an offense prior to July 1, 1996, but is sentenced after that date, is not entitled to be sentenced under Senate Bill 2. We are aware that a conflict existed between the various appellate districts regarding the resolution of this issue. However, the Supreme Court of Ohio has recently resolved this conflict, consistent with our opinion in Sprafka. See Statev. Rush (1998), 83 Ohio St.3d 53. Appellant's third assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed.
 _________________________________ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J., NADER, J., concur.
[1] These nonviolent methods of discipline were not the subject of any of the counts in the indictment.